We already have addressed the relevant statutes and case law in our briefs. Our position is that the statutory language is plain and unambiguous, and that really should be the end of the analysis. I will try not to use my time repeating points that we have already made in the briefs. Instead, I would like to focus on the policy arguments that appellees have raised in order to request that this panel ignore the plain statutory language. Well, what is the precise false statement involved here? Well, actually, this issue has not been addressed by the district court yet. No, but at some point I would like to know what is your case. Since perhaps it would help to update the panel a bit on the status of the case. Since this case was briefed, we now have had an arbitration before a panel. Took about two and a half weeks to try to get a proceeding. And the panel actually found that representations were made to the public in general and to the government expressly, that the distributors would be able to compete with the Johnson Control branch offices. And in fact, they found on jobs in general and some of these particular bids as well. Riverside. And yes, yes. Statements were. Yes. On some of them, yes. On others that weren't expressed, expressed findings. But yes, they found that these statements were made to the government expressly, that there would be competition between them. And those statements were made in order to encourage the government to choose the Johnson Controls product as opposed to other building manufacturers product. As you know from our briefs, once they choose a particular building controls manufacturer's product, after that time, it's difficult to bring in a second manufacturer. So essentially, I mean, I've been a little mystified as well about why an antitrust violation standing alone is a false claim act treatment. But you're essentially buying at this point to the the tentative ruling for the district court issued and which appears somewhat in your briefs. That is that the theory that there was a false representation made about competitiveness. Yes. That's one position. I think that there are three reasons why this would state a claim. Number one is these representations were made and they were not true because after the representations were made, our clients were coerced not to bid on certain jobs. And in fact, there was evidence that other distributors also were coerced to bid on jobs. Your record's kind of flimsy on that. You didn't exactly make a 56-F motion, although you made some mention of 56-F in your papers below. Yes, we did make a 56-F motion and we do believe that there was not enough evidence before the court. At that point in time, we hadn't had a chance to conduct any discovery in the case. This was years ago. They brought the summary judgment motion within a month after a motion to dismiss, maybe it was two months. So there was no chance of conducting a discovery. And what are the other two theories? The other two theories, first of all, the panel already found that there was a Percy antitrust violation and that it's sufficient to support a False Claims Act violation. And even if that was not the case, we also believe a rule of reason violation would be sufficient to support a False Claims Act violation. And in fact, they've relied upon a Haggard case, which suggests that if there's a regulation with actual discretion within the regulation, then that could not result in a False Claims Act action. However, the Oliver case later said that that was because that was a discretionary statute. The statute actually provided discretion. The Oliver case suggested that if there's a statute, even if it's technical and complex, it's for the court to determine what is a violation and what is not. We'll get back in a moment to the quasi-jurisdictional question. But just to repeat Judge Noonan's question, why are the antitrust violations themselves a violation of the False Claims Act directly? Any time. What's the false statement? Well, the false statement would be that there is competitive bidding here. And in fact, there was not. And that's the basis for a violation of antitrust laws here. It's also a basis for an independent misrepresentation, whether or not there is a violation of the antitrust laws. You're just saying that's implicit in the bidding process and it has sort of supports this, that there isn't going to be an antitrust violation. Yes, absolutely. You wouldn't argue that this applies to any illegality, would you? Just antitrust violation? Well, it's been found to apply to all sorts of illegalities. It's been found to apply to, for instance, assertions that products meet a certain level. That's an assertion. But I'm just talking about an antitrust violation with no assertion. Well, yes, I do certainly think that when you submit a bid to the government, there is an implied assertion in that, that you are not rigging the bid and you are not destroying the competitive bidding process. And the Supreme Court has already held in the United States, Marcus v. Hess, I believe it was, that that does support a False Claims Act action. All right. Go back to you. Can I ask you a question on the business? You're a distributor of Johnson Controls. Do you compete with them by selling their product for the lower price? What's the competition? Well, there's a variety of competition. This is not just a widget that you buy and then sell for five cents more. This is a product where about two thirds of every bid is actually the installation and labor functions. I see. So the competition is on that. Yes, it's more so on labor installation. In fact, our clients are at a disadvantage with respect to the product because they purchase it at a higher price than the branch office obtains it itself. So there is competition here. And the market was led. And there was expressed representations made to the government that there would be competition between the distributors and manufacturers. And again, I believe that would support a False Claims Act violation. And yet again, the district court, there's been no record developed for the district court at this point. We do believe it's not right for us. Your position is we shouldn't decide it. We should send it back. Yes. I think in the first instance, the district court should be able to review the evidence. There's been quite a bit of evidence that's been discovered since the district court had a chance to even. Well, it never was decided by the district court. There's no record at this point. You were going to talk about the jurisdictional pressure. You were going to walk away from the labor laws, which is your strongest argument, and start talking about policy. Well, I certainly agree that the statutory language is strongly in our favor. I've poured over Petelli's brief and I've poured over the Sixth Circuit and district court, the D.C. actually addressed Section 3730E4B and explained how it's consistent with this additional requirement they've placed upon us here. However, I also believe that the policy strongly supports the reversal of this district court's decision and allowing our clients to continue as key town relators. I think this case perfectly illustrates why the policy actually supports us rather than militates against us. Here, we've already had an arbitration before a panel. The panel found that there was a first antitrust violation. They found there was a legal bid-rigging scheme. And that bid-rigging scheme was targeted both at non-government jobs but also government jobs. So that decision means that the government here has been defrauded. There has been a False Claims Act violation. However, the government's not going to recover here because the district court decided that our clients should not be able to proceed as key town relators. And for what purpose? We've already discussed the statutory language doesn't support that position. So the appellees are left to point to various purported policy reasons. But again, this case demonstrates that none of those policy reasons really hold water. Well, they may not hold water in this case. I suppose what your opponents would be arguing is that we're going to have a rule that governs all cases. And most of them, there may very well not be a decision on the merits in the case that caused the public disclosure. And in that case, some of the things that move the other circuits to rule against your position might come into play. I agree that this is not purely about my case. I'm only pointing to our case because I think it's an excellent example of why the policy is not in favor of appellees here. Is it cut both ways? Well, I think for these purposes, you need to assume that there is a valid False Claims Act action and move forward from there for purposes of our argument and analyzing the policies. The first policy that the District Court touched upon, the one it based its decision upon, was its concern about potential extortion. It hypothesized that a plaintiff could first file a personal suit and then threaten to file a False Claims Act suit but never actually file one in order to try to pressure the defendants into providing them with a larger settlement than they normally would have gotten. Of course, the laws of extortion should prohibit that already. They do prohibit that. And, of course, that's not what happened here. Our clients never threatened to file a False Claims Act action. They just filed one. A case law that says that that agreement wouldn't be enforceable anyway? That's what I was about to touch on. And, of course, this circuit has already addressed that issue by the United States' X-Rail Green decision. So really, the extortion here, it's not a policy that – there's no policy support in rules regarding extortion to – I'm sorry about that. Basically, the hypothetical situation the district court was concerned about is simply not an issue. If you don't have – you can commit extortion without bothering to start a lawsuit or publicly disclose. Absolutely. If somebody was bent on committing extortion despite the laws against it, they'd quietly contact somebody at the defendant's office and threaten to bring a suit. They wouldn't go and publicize it in a court filing. That would take the risk, obviously, of making their threat into an empty threat if it's already public and already within the government's knowledge. Appellees also point to the policy which underlies the public disclosure bar and the original source exception of discouraging opportunistic plaintiffs. However, the policy underlying the public disclosure bar and the original source exception is to discourage a cottage industry, a professional key-term relators, while at the same time allowing relators to pursue plans on behalf of the government when that's not at issue. In other words, Congress didn't want a group of professional relators scouring the newspapers and government indictments every day and then running to the courthouse to race the government there to get a piece of the government's recovery without actually providing any benefit to the government. And again, this case and other cases that would be like this case prove that that policy just doesn't hold water here again. Our clients didn't learn about this fraud from a newspaper or a criminal indictment. They were directly exposed to the fraud. In fact, it would lead witnesses and derail the company's registration. Well, they couldn't. I mean, it strikes me that the real divide is between the courts that buy the Wang theory and the ones that don't because the Sixth Circuit and the D.C. Circuit specifically didn't approve the Wang theory and that's why they ended up with what they thought was a problem, i.e. that the person who is doing this might not, in fact, be the whistleblower. But here, the person has to be at least the public discloser. I agree, absolutely. I believe that the Wang decision really does address this and resolves this issue. We only have taken the position that if you satisfy Wang, you could fall within the original source exception. And that means that you need to be the original source of the public disclosure. So you need to be the whistleblower by going public at least. You can't have simply been sitting around and doing nothing. Exactly. So there's no threat here of creating a cottage industry of professional key town relators. Instead, all we're doing is preventing a broad swath of the most likely key town relators from proceeding with a case on behalf of the government, the end result being the government recovers less money. The third policy that the appellees have focused on is that once there's been public disclosure, a relator is simply not necessary at that point because the government can proceed with the action if it chooses to do so. And again, this case demonstrates that that theory, again, is not valid. Here, if Mr. Yarley and Mr. Zeretsky are not committed to go forward, the government is not going to recover a dime. Our clients remain ready, willing, and able. And one thing that's very odd, however, is the provision that the statute already says that any relator who wants to file has to give the government a copy of the complaint and written disclosure of substantially all material evidence and information the person possesses, pursuant to Rule 4 and D4, the rules of civil procedure, and then also file in camera. And then this provision, the original source provision, then says you have to voluntarily provide it to the government, which you have to do anyway. So it seems like a completely redundant provision. It's hard to figure out what it's doing there. Well, I think that what's going on is that the first provision you mentioned applies in all cases. Right. The second provision only applies when there's been a public disclosure. So in cases where there's already been a public disclosure, it's possible the government already knows about it and is doing something about it. In that case, before an action is actually filed, the government gets a chance to learn about it before the filing. And that gives them time to either encourage the relator to move forward if that is what they think is the best decision or discourage the relator from moving forward if there's some sort of policy reason out there within the government that would lead them to not want the case to move forward. And I would argue that actually the district court's decision makes 3730E4B redundant because if you require a relator to serve as the original source to provide information to the government before the public disclosure, then you wouldn't need to require them to provide information to the government before filing the action. 3730E4B becomes completely redundant. We have about five minutes left. You can either save it or you can go on. Unless the panel has any further questions, I'll save my time for about a minute. Thank you very much. Thank you. Thank you. May it please the court, David Simon on behalf of the appellees, Johnson Controls, and the individual defendants. The first point I'd like to make is the ambiguity point. This statute that we're asking the court to interpret today is a 2100 word, eight-part statute. We submit that under lots of Supreme Court authority that we cited in our brief, it's not appropriate to just pluck five words out of one subsection of the statute. Well, what other sections have to do with when something should be filed first? Well, subsection B, Judge Berzon had just raised, and this is an essential point, if you reverse the district court's reading of the statute, you will make subsection B redundant and superfluous. Well, why? I mean, let's say that there's been no public disclosure at all, and I want to sue somebody because I know they've cheated the government. I file a complaint under seal, put it in the government's lap for how many ever days it has to be, and then if the government decides that you don't want to participate, they unseal it and I go forward. That would still have an effect? Well, that is required under subsection B, irrespective of whether there's a public disclosure. So the question is... That doesn't become superfluous. Then what does become superfluous? Subsection D, I'm sorry, subsection E becomes superfluous because under the reading of relators, all they're required to do is tell the government before they file their False Claims Act suit. And that's already required... I mean, it's very nice to say it's redundant, but it's exactly what it says. Your Honor, I submit it's not that simple. I mean, the Wang Court has already found this provision to be ambiguous. Well, sorry, which court? Wang. Wang added... This provision? No, not this provision. Well, but sub A and sub B work together, and Wang defines original source using the... had a hand in disclosing... The second part of it, which is the timing part, is just absolutely lucid. Well, but it only makes sense in context of both subsection A, which talks about public disclosure, which is a pre-existing... Isn't it also true that the Sixth Circuit and the D.C. Circuit rejected Wang simultaneously with coming to this conclusion? That's true, Your Honor. And they're linked. It's not simply an accident. They viewed... They saw the same problem that Wang saw, and they decided to solve it by reading words in here instead of by the way we solved it in Wang. And for us to now go do what they did would be to do it twice, essentially to make this person both the source of the public disclosure and therefore a whistleblower, which is what Wang was trying to make sure of, and then to say, well, even if that's the case, and even if it's your information, and even though the statute says you only have to do it before you file the action, you actually have to do it before you disclose. Wang did not have this issue presented to it. I understand that. You're asking us to look at the statute as a whole, and I'm saying if you look at the statute as a whole, you might say their system makes sense, and you might say our system makes sense, but the one system that wouldn't seem to make any sense would be to have Wang and the rule you're arguing for. But Wang presented a true parasitic heat tam case. Wang just pulled something out of a newspaper report and put it into his false claims act. Which, according to the Sixth Circuit and the D.C. Circuit, you can do, but you have to first go to the government with the information. Right. And the principal interest... But you can't do it. If you can't do it at all, then what's the function of having to go to the government with the information? The function of... Well, no. Wang says you have to have had a hand in the disclosure, and what Wang is really focused on is whether the relator is a true whistleblower. Is this someone who came forward and exposed a fraud? Exactly. This person in this case was. And this person in this case... I mean, the chronology of events, I think, is very telling in this case. I mean, the alleged fraud that occurred was in January or February of 2001. This relator didn't come to the government then. It waited until there was a dispute with Johnson Controls a year and a half later in, I believe it's August of 2002. Which it could have done anyway if it had gone to the government at that point. That would have been fine. But it didn't go to the government. I mean, it didn't go to the government. I think it has nothing to do with it because it could have gone to the government when it filed the first suit. I mean, the question is, is this relator blowing the whistle on a fraud or is this relator pursuing its own private interest? And the reason that's important, Your Honor, is because of the critical government interest here. This is the government's claim. And the government and Congress in enacting these 1986 amendments wanted these claims presented, and this Court has recognized this in the Biddle case, in the Wang case, and in the Lujan case, wanted these claims presented to the government at the earliest possible time. And the reason subsection B requires it to be filed under seal is because the government has an interest in investigating these cases. But under your theory, they could have done that and then filed their lawsuit two weeks later and that would have been fine. No. They couldn't, they can't cause the public disclosure until the government has the opportunity to intervene. What they should have done, and assuming they had some reason to move their state court case faster, is they should have gone to the government, they could have voluntarily disclosed, they could have filed shortly thereafter their False Claims Act case under seal, served it on the government, and it would stay secret. The difference here is that they are the ones who caused the public disclosure. Wait a minute, where are you getting that from? Now you're adding another clause that isn't here. Well, no, the clause is still, the argument we're advocating is go to the government first before there's a public disclosure. Okay, and then make the public disclosure. And then file your private lawsuit. Where would you get another rule from? You can't file a lawsuit either. Well, you can file a lawsuit. Okay. You've got to file a subsection B and keep it under seal. No, no. As I understand it, you're trying to read in a rule that says that you have to go to the government before you disclose. Now you're saying you can't disclose. Well, you should not disclose the information while the government is investigating. That's a critical policy of this statutory statute. That gives me another problem under the statute. You're saying, in other words, one scenario you're suggesting is a would-be whistleblower learns something. He should go to the government and tell them. Then he can file a false claims action and submit it to the government. And then later file his lawsuit or something? Well, when it's unsealed, and the government makes its decision about whether there's a fraud here, whether it wants to intervene, whether it needs to continue to investigate, whether there's a broader fraud scheme implicated, which might even be a criminal action. That's the reason. He wants to go to the newspaper in the meanwhile because he thinks the government's not moving. He thinks that if he goes to the newspaper and puts a pressure on him, maybe the government will move. He can't do that. Well, the government has to decide in 60 days whether to intervene. What troubles me on the statute is that if the whistleblower goes to the government and then files its complaint with the government and then later discloses, what the Act talks about in the original source requirement is a false Act claim based on a public disclosure. And you're saying you go to the government with a complaint in a lawsuit when there hasn't been a public disclosure at all. How can anything come into play when you're filing a lawsuit that's not based on a public disclosure? Where, in our submission, where this comes into play is where the public disclosure occurs as a result of someone else, something else. I mean, like the Lujan case. That doesn't work because under Wang, the person can never be a public source of that,  I'm sorry, Your Honor? Under Wang, then that person, the person who, unless he is the source of the public disclosure, cannot be an original source and can't file the lawsuit. Well, but if Wang, no, that's not, I don't think that's what I'm saying, Your Honor. If someone else had disclosed Wang's allegations of fraud through no fault of his own after he had voluntarily disclosed them to the government but before he filed his key TAM suit, he would qualify as an original source. That's the Lujan case. And of all these cases that we've all cited here in the Ninth Circuit, most of them, almost all of them, find the relator not to be an original source. Wang was one of them. Lujan is a case where the relator had allegations of fraud. She went to the government with him. She did what she was supposed to do. She presented them to the government, and through no fault of hers, someone else, who also had independent knowledge of the same fraud, filed the key TAM suit. Now, I gather that you're not supporting the rule, the split rule that district courts need to sanction. That is, a separate rule for lawsuits. That's correct, Your Honor. From other kinds of disclosures. You would have the same rule for any kind of disclosure. We think that the district court was deciding this case. We don't think a different rule should apply. And so, on that, when you do that, then the arguments that revolve around problems of selling the lawsuit kind of go out the window, because your argument is not dependent on there being a lawsuit. I think that's correct. I don't think that's an especially compelling rationale. I think the policy of treating these claims as the government's claims, to be presented to the government at the earliest possible time in unsullied, pristine form, so that the government can evaluate them, so that the government can investigate, so the government can see if a crime has been committed. That's the preeminent policy. That's the reason, ultimately, I think that's motivating the Sixth Circuit and the D.C. Circuit to adopt this rule. I'd just like to make a point about the purpose, the context. I mean, obviously, under principles of statutory interpretation, the court's job is to make sense of what Congress intended to do here. And the policies we've been discussing are important in evaluating that. The structure of the statute, the function of subsection B in conjunction with subsection E is important. Another important element of this is how this fits in with the law as it had been previously and subsequently enacted. And the 1986 amendments, and the Wayne court held this,  And isn't this section, I mean, it's an odd section, but it's really a description of the Dean problem. That's exactly what it is. Remember where Dean fits. Dean comes out of the 1943 amendments to the False Claims Act, which was a reaction to the initial rule. The initial rule was anybody can be a relator. It was a free-for-all. You could copy a False Claims Act complaint out of a criminal indictment and call it False Claims Act and get a 50% of the government's recovery. Congress reacted to that in 1943 with amendments saying, you can't be a relator if the information you have is already in the hands of the government. So Dean comes along, and in Dean, the state of Wisconsin discovered Medicaid fraud. And it did what it was supposed to do. It did what Lujan did, what relators did not do here, and that's they brought the claim to the government and said, hey, these guys are cheating you. Then they filed a QTAM suit, and the Seventh Circuit held you're barred because the information was already in the hands of the government. The problem with that was it got there because the state of Wisconsin put it in their hands. And so the 1986 amendments were an attempt to correct that. So here you have somebody who filed a lawsuit, which the government may or may not have heard about. But assuming it did hear about it, then it has heard from this person about the problem. And if it didn't hear about it, then it will hear about it before the lawsuit's filed. So what's the problem? Well, the problem is that it's been publicly disclosed. I mean, the relators here. Why is that bad? Why is that good? Because the government can't investigate it in secret. Why not? Because the defendant's been tipped off. I mean, I think the best way to think about this is this hypothetical. If the relators here had filed their state court suit, the state court suit that they filed. Isn't it very often that things show up in the newspaper and then the government investigates it? Or somebody files one lawsuit and the government then investigates it? Sure. But in order to get a share of the government's recovery, Congress has said you have to do more than that. They did do more than that. They found out the information. Right. And they tried to use it to their own private benefit instead of alerting the government. And also alert the government. And in so doing, though, notified the defendant. I mean, obviously, this case doesn't involve this sort of circumstance. But, you know, if this was a potentially broader conspiracy that involved a potential criminal investigation that the government might want to undertake, there are real reasons why, and that's subsection B, why the government wants it kept secret.  And I was just going to say, Your Honor, the subsection B hypothetical, if the relators here had filed the exact same complaint that they filed in state court, but had titled it False Claims Act and filed it in federal court and did exactly what they did in state court, which is serve the defendant, there would have been a sealed violation. And they would very likely have been out of court for violating subsection B. So our position is, why would Congress have wanted to let them accomplish that exact same result just because they called it a state court antitrust case as opposed to a federal False Claims Act case? That doesn't make sense in our submission. But the trouble is that you're saying that if they come to the government and file a False Claims Act, they're essentially dead, because it's at least for a certain period of time. But we're dealing with subsections of the Act that only come into play when we've got an action that's based on a public disclosure. And it seems to me that example just can't be relevant to this lawsuit because it can't be an action filed upon a public disclosure if there's been no public disclosure and can't be an action filed upon a public disclosure. Well, that's true, Your Honor. I mean, all this only comes into play when there's been a public disclosure. No question about it. No question about it. And if you take your chances and don't go to the government promptly when you discover the fraud, and there is no public disclosure in the meantime, then this doesn't present a problem. The problem is in this situation, and it's a special problem where the relator, him or herself, causes the disclosure and in a sense spoils the government's otherwise pure allegation of fraud that the government would want to investigate. Under the Wang theory, I think this is right, if there's a public disclosure that you don't make in the meanwhile, then you're not the original source and you can't do it. You can't bring the case once there's been that public disclosure. If someone else makes the public disclosure and you don't have a hand in it. That's true. All right. So your hypothetical doesn't exist for the only way that this statute can make any sense in your theory. In other words, in your theory, the only way it can make any sense is if you go to the government and just somebody else comes in and makes a public disclosure in the meanwhile. But if that happens under Wang, you're out. You're lost. Well, no. If you went to the government first, you're not out. Why not? Because under our theory, if you went to the government before there was. . . Your theory, but Wang says no. Wang says that if you file a lawsuit after there's been a public disclosure and you weren't responsible for the public disclosure, you're out. I don't believe that's the holding of Wang. That's not how I read Wang. Wang holds this relator. The relator in Wang was not an original source because he just grabbed something that was already in the public record. If you put Wang together with Biddle, that's my hypothetical. It has to be. Well, what about Lujan? I mean, Lujan, this court held in exactly that situation, a relator who someone else publicly disclosed through a false claims act case, and we don't know exactly how that second false claims act came to be based on the Lujan opinion. That individual, that woman, was in fact protected and would have been under our theory, too. Can I ask you briefly about the antitrust, the merits? Do you agree that we should not decide the merits of the merits? Your Honor, it has grown more complicated as a result of proceedings in the arbitration panel. We submit, and this is fully briefed, it was fully briefed before the district court. Our clients never submitted claims to the government. To the extent there's an issue here about restricting what clients they could bid on, what projects they could bid on, under this court's precedent, it's a rule of reason analysis. We submit a rule of reason violation. But again, the arbitration held other ones. Well, the holding right now is per se, but it's not a final order. Remains to be. Well, I'm not sure it would be. It's certainly not right now. I mean, it's not a final order. That complication, as well as others, doesn't even make sense for us to submit. It may make sense.  Thank you, Your Honor. We've talked about how, in our briefs, how the most fruitful source of potential relators would be individuals that also have claims on their own behalf. It seems to be appellee's position that the best way to treat these people would be to force a choice. They would be forced to choose between their own individual action and pursuing a claim on behalf of the government. And they seem to assume that these individuals are going to choose the government's action over their own. I can tell you that I don't think that's true. In our case, for just, again, I think it's a good example, if our clients were told you can pursue a claim on behalf of the government and potentially it might be as low as a 10% recovery of the government's damages, they would have moved forward with their own action. And here, again, we already touched on this as well, it was important. They came to us and we looked at their case and we decided that we need to move promptly to file your action because there's potential statute of limitations issues here. And, in fact, when we entered the arbitration, the appellees raised the statute of limitations as a defense. If we had delayed, we would have jeopardized our client's recovery. So, basically, the end result of their position is that many relators are still going to follow their own action because that's where their self-interest is. And there's no reason, I understand the theory of a good Samaritan, and I like that, but most people are not going to forego their own rights to pursue a recovery on behalf of the government. So the end result's going to be they're still going to file on their own behalf and once that's done, there's no incentive under the False Claims Act for them to go pursue a claim on behalf of the government. In other words, there'll be no incentive for them to come forward. There'll be no government investigation at all. The government will never learn of the fraud. That's particularly so if a case is filed in a non-public arbitral forum, but it also applies if a case is filed in court. The federal government does not have time to review every single pleading that's made in every court in the country. So unless the False Claims Act action is filed, there's likely never a government investigation. Well, what's to keep them, if they want to pursue their own action, what's to keep them from going to the government tomorrow and then filing their own action the day after? Well, I believe we just heard Apelli's counsel explain that that would be a violation of the seal period. Well, I'm not saying starting an action. I'm just saying going to the government and saying, look, I'm telling you what I'm going to disclose tomorrow when I file a lawsuit against my tort user. So I told you, it's disclosed. Now I'm going to go make it public by filing a lawsuit. There's still... Well, first of all, there's no language in the statute that would suggest that. So we're assuming that a potential relator goes out and researches case law and finds this additional requirement. But even if they were to know about it, there still are issues about preparing. When you inform a government, you're supposed to provide them with substantial amounts of information. I know you're not suggesting that they need to file a False Claims Act claim right away, but to encourage the government to get involved and to really provide them with the information they need, you need to gather evidence and you need to prepare a presentation to the government. That's what we did here. We had our clients go back here five years of files to get more information so they could then plead a claim with specificity and make a presentation to the government, encourage them to get involved. Otherwise, there may not be an adequate disclosure under your opponent's scenario. Yes. I'm sorry, I didn't quite follow that. Well, I guess you're suggesting that just telling them what you're about to do and even showing them, giving them a copy of the complaint you're going to file in the state court against them tomorrow, against your opponent, is not sufficient. I think you're right. That might not be an adequate disclosure to the government to protect our client from the public disclosure bar on their version of that bar. I think that's correct. So that's another issue there. I'd also mention they raised the Dean decision and I agree that Congress reacted to the Dean decision and amended the False Claims Act. When it did so, however, it didn't limit it specifically to the Dean situation. If you look at 3730E4A, it specifically envisions disclosure through the media and then 3730E4B creates an exception which allows an original source to go forward. So the Dean decision, yes, involved a situation where Wisconsin had given information to the government and it was not allowed to move forward. However, when they drafted the legislation, they specifically envisioned disclosure to the media as well. So, again, that doesn't mesh with their theory here, I don't believe. I believe that's all I have unless the panel has any further questions. Thank you very much. Thank you. Thank you, counsel, for helpful arguments. The case of Zaretsky v. Johnson Controls will be submitted. The panel will take a 10-minute break.
judges: Canby, Noonan, Berzon